# Richmond.

## A. J. CRAFTS v. BROADWAY NATIONAL BANK OF RICHMOND, VA.

### May 28, 1925.

1. ANOTHER SUIT PENDING—*Dismissal of Second Suit—Record of First Suit not Brought before Appellate Court.*—It was assigned as error that the trial court erred in overruling a motion of plaintiff in error to dismiss the instant notice of motion because there was then pending in the same court, between the same parties, another notice of motion for the same causes in which there had been a trial and verdict for plaintiff in error which the court had set aside.

    *Held:* That as the record in the first case had not been brought before the appellate court by bill of exceptions or otherwise, it was unable to give intelligent consideration to this assignment.

2. PAROL EVIDENCE—*Bills, Notes and Checks—Parol Evidence of a Promise by the Payee of a Note not to Enforce Payment by the Indorser—Case at Bar.*—In the instant case, an action on a note against an indorser, the court refused to allow defendant to testify as to a promise made him by the president of the payee that the note would not be enforced so long as the collections on certain collateral were turned over to the payee. The note was in the usual form of collateral contracts employed generally by banks, and was an unconditional promise to pay the sum therein stated on a certain date to the payee.

    *Held:* That the court did not err in excluding this evidence.

3. PAROL EVIDENCE—*Contemporaneous Parol Agreement Contradicting or Varying a Written Contract.*—A contemporaneous verbal agreement cannot be introduced to vary or contradict a written contract between the parties where the rights of no third party are involved.

4. PAROL EVIDENCE—*Bills, Notes and Checks—Delivery on Condition.*—When a note is delivered to the payee with an agreement that it is not to become effective until the happening of a certain event, the terms of delivery and conditions agreed upon may be proved by parol. But this rule has no application to a note which admittedly became binding and effective upon delivery and was upon its face in all respects regular.

5. STARE DECISIS—*Rule not to be Departed from.*—The province of a court of last resort is not only to declare the law as it applies to the facts of a given case, but is also to make plain the rights and obligations

of those having similar interests to protect, duties to perform and contracts to observe. When these have once been announced by a court of final appeal, they should not be departed from except for the most convincing reasons.

6. BILLS, NOTES AND CHECKS—*Contracts—Parol Evidence—Parol Agreement that Payment will not be Demanded at Maturity.*—Where a negotiable note or other unconditional promise to pay at a stipulated time is regular upon its face, and is delivered to the payee as a valid and binding obligation for ever so short a time, no contemporaneous parol agreement can be set up to show that payment was not to be demanded at maturity, or until attached collateral had been exhausted, or until the happening of any other subsequent event not mentioned in the note itself. All such efforts have as their end to change or vary the terms of the written contract.

Error to a judgment of the Circuit Court of city of Richmond. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

The opinion states the case.

*Bethel & Williams,* for the plaintiff in error.

*Frank T. Sutton, Jr.,* for the defendant in error.

McLEMORE, J., delivered the opinion of the court.

The action in the court below in which the Broadway National Bank was plaintiff (and will be hereafter so termed) and A. J. Crafts was defendant, grows out of a transaction originally between A. J. Crafts Piano Company and the plaintiff bank, in which accommodation was extended by the bank to the extent of $8,000.00 evidenced by a collateral note to secure which the piano company had placed with the bank Liberty Bonds and contracts had with their customers covering various sales of pianos sold on the installment plan—the aggregate of which was considerably more than the $8,000.00 note aforesaid. This note was first executed in the

spring of 1921 and reduced later on, by the sale of the Liberty Bonds, to about $4,400.00.

Prior to May 31, 1921, defendant, A. J. Crafts, who was president of the piano company, was advised that the bank authorities were not satisfied with the security attached to the note, now $4,400.00, and after some negotiations the defendants agreed to and did endorse the same.

On September 28, 1921, a renewal note was executed for $4,050.00 payable November 28, 1921, the principal having been thus reduced from $4,400.00 as a result of collections from the collateral security placed with the bank. This note was not paid at maturity and suit was instituted by the bank resulting in a verdict and judgment for the plaintiff, to which a writ of error was awarded, and thus the case is before this court for review.

[1] There seems to have been pending in the said Circuit Court of the city of Richmond at the time of the institution of this action and of the trial thereof, a suit in which Broadway National Bank was plaintiff and A. J. Crafts Piano Company, Inc., and A. J. Crafts were the defendants involving the same indebtedness and in which there had been a trial and verdict for the defendants which the court had set aside. It was contended, both in the brief of defendant's counsel and in the oral argument, that it was error for the court to try the instant case while the other was pending, and this is made the occasion for the first error assigned in the petition.

As the record in the first case has not been brought before us by bill of exceptions or otherwise, we are unable to give intelligent consideration to this assignment.

[2] The 2nd, 3rd, 4th and 5th assignments of error center around the refusal of the court to allow the defendant to state before the jury his version of an agree-

ment had with H. N. Phillips, president of the bank, as to certain promises claimed by him to have been made by said Phillips at the time he endorsed the note.  His contention may be best stated by quoting his own language:

"Q. Now, then, Mr. Crafts, was anyone present at the time you and Mr. Phillips had this understanding?

"A. No, sir."

By the court:

"Q. What is that understanding?

"A. My understanding was that I was to give him the collections each month for the preceding month and as long as I did that he would not call the note, but he wanted my endorsement for the purpose of satisfying the bank examiner, he said.

"Q. Let's understand that; that although you promised to pay the note at the end or whatever the time was, he would not call on you for payment?

"A. That is true.  He said he would keep on renewing it until it was liquidated."

The collections referred to were such payments as might from time to time be made on the piano contracts held by the plaintiff as collateral.  The note was in the usual form of collateral contracts employed generally by banks, and was an unconditional promise to pay the sum therein stated on November 28, 1921, to Broadway National Bank at its banking house in the city of Richmond.

[3] The question to be determined is whether or not a contemporaneous verbal agreement can be introduced to vary or contradict a written contract between the parties, where the rights of no third party are involved.

[4] The courts of the many jurisdictions in this country are by no means in harmony on this branch of the law.  The authorities seem reasonably well agreed that

when a note is delivered to the payee with an agreement that it is *not to become effective* until the happening of a certain event, *i. e.*, obtaining signature of an additional endorser, as in *Blair* v. *Security Bank*, 103 Va. 763, 50 S. E. 262, and *Hodge* v. *Smith*, 130 Wis. 326, 110 N. W. 192, the terms of delivery and conditions agreed upon may be proved by parol evidence. So also where the conditions upon which the note was to become operative never occurred, as in *Catt* v. *Olivier*, 98 Va. 580, 583-4, 36 S. E. 980.

In this class of cases it will be observed that the notes never became effective because of the failure to comply with a *condition precedent.* In the case before us the note was admittedly to become binding and effective upon delivery, and was upon its face in all respects regular.

The attempts of the defendant to prove an agreement, made at the time of the execution and delivery of the note, that it was not to be enforced against the endorsers until the collateral piano contracts had been collected and the proceeds applied to the payment thereof, was objected to by plaintiff's counsel, because it set up a contract by parol differing from the terms of the collateral note. The court sustained the objection and excluded all evidence tending to set up the parol contract.

This brings us to the real issue in the case, for if the ruling of the trial court was without error in holding that no evidence could be introduced upon the trial that tended to alter the terms of the note, or to set up conditions contracting or expanding its terms as written, then no other verdict could have been rendered by the jury and the judgment of the trial court should be affirmed.

It will be observed that the note sued on was regular on its face and complete in its terms. It was admittedly delivered to the bank for discount and by the bank so handled. The defense offered in opposition to its col-

lection is based upon an agreement alleged to have been entered into between the president of the bank and Crafts, whereby the note, which was an unconditional promise to pay at maturity, was in fact only an evidence of debt, with the right to demand payment indefinitely postponed.

This is a clear case of attempting, by a contemporaneous oral agreement, to alter and change the terms of a perfectly plain, clear and explicit written contract.   We are of the opinion that whatever may be the holdings of some of the courts of this country, the question is not an open one in this jurisdiction.

As early as *Towner* v. *Lucas*, 13 Gratt. (54 Va.), 705, 716, we find the doctrine discussed in the following language:

"It is reasoning in a circle to argue fraud is made out when it is shown by oral testimony that the obligee, contemporaneously with the execution of a bond, promised not to enforce it.   Such a principle would nullify the rule; for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its terms would always be guilty of fraud.   The true question is, was there any such agreement?   And this can only be established by legitimate testimony. For reasons founded on wisdom, and to prevent frauds and perjuries, the rule of the common law excludes such oral testimony of the alleged agreement; * * * It cannot be assumed that the written contract was designed as an imperfect expression of the parties agreement, from the mere fact that the written memorial contains nothing on the subject to which the parol evidence is directed. On that assumption the rule which excludes parol proof as a means of adding to the written contract would be entirely abrogated.   And to permit parties to lay a foun-

dation for adding to the contract by oral testimony that they agreed that part only of their contract should be reduced to writing would open the door to the very evil the rule was designed to avoid."

Judge Burks, after a most exhaustive examination of the authorities on this subject, says, in *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157:

"In a controversy between the immediate parties to a written instrument, the parol evidence rule does not forbid the use of parol evidence to establish any fact that does not vary, alter or contradict the terms of the instrument, or the legal effect of the terms used. These are concluded by the writing, and the parties are estopped to deny them. Thus it is not permissible for a party who has signed and delivered a valid written instrument to show that there was an agreement that he was not to be bound at all, or that suit was never to be brought on it, or that it was to be paid only out of a particular fund, or that a blank endorsement was without recourse, or that it was to be paid at a different time from that stated, or that an endorser should be liable only as an assignor, or that a promise to pay money was to be discharged in some other manner, or any other similar defense. For such defenses vary the legal effect of the language used in the instrument."

In *Robertson* v. *Virginia National Bank*, 135 Va. 166, 184, 115 S. E. 536, 541, Judge Sims, speaking for the court, uses the following language:

"In such case, under the section just quoted, as stated in the note of the revisors thereto, '* * a person may manually deliver a negotiable instrument to another, on its face containing a binding obligation *in praesenti* of such person to such other, with a contemporaneous verbal agreement that it shall not take effect until the happening of some specified event (as, that others shall en-

dorse it).   This does not violate the rule that a written instrument cannot be varied by contemporaneous parol agreement, but is only evidence to show that the instrument never had vitality as a contract * *.'   Citing *Hodge* v. *Smith*, 130 Wis. 326, 110 N. W. 192."   See also *Woodward, Baldwin & Co.* v. *Foster*, 18 Gratt. (59 Va.), 200.

The last announcement of the court on the subject is found in the case of *Continental Trust Co.* v. *Witt*, 139 Va. 467, 124 S. E. 268:

"But where the instrument is in fact delivered as a valid and binding obligation, for any moment of time, and it is sought by parol evidence to show an agreement by the obligee (even though the alleged agreement is said to have been made at or before the delivery of the instrument) to release the obligor from his liability under the terms of the instrument, or to limit such liability, upon the happening of any subsequent event, or under any subsequent circumstances whatever, the parol evidence rule is applicable, and the evidence is inadmissible, and the same is true in an action by an indorsee with knowledge of such an agreement.   See, in addition to the cases above cited, 1 Joyce's Defenses to Commercial Paper (2nd ed.), section 519, page 714; Chamberlayne on Evidence, section 3553; 2 Elliott on Contracts, 1620, 1621, 1625.   In such cases, where a negotiable instrument is involved, 'the property in the instrument,' within the meaning of section 5578 of the Code, is passed by the delivery of the instrument, and it may not be shown by parol evidence, even as between the immediate parties, that the delivery of the instrument was conditional, or for a special purpose only, other than what appears from the terms of the instrument itself."

There is not wanting authority for the proposition that a note complete upon its face may be explained or

varied by parol evidence, establishing an agreement that it should not be enforced in accordance with its legal tenor and effect. Conspicuous among this line of cases is *Sykes, et als., Trustees* v. *Everett,* 167 N. C. 600, 83 S. E. 585, 4 A. L. R. 751, which doctrine seems also to be held in Pennsylvania, Colorado and a few other States, but to attempt a review of the cases would neither reconcile or clarify the conflicting positions taken by the courts.

[5] The province of a court of last resort is not only to declare the law as it applies to the facts of a given case, but is also to make plain the rights and obligations of those having similar interest to protect, duties to perform and contracts to observe. When these have once been announced by a court of final appeal, they should not be departed from except for the most convincing reasons.

[6] It may be confidently affirmed, as the settled law of this State, that where a negotiable note or other unconditional promise to pay at a stipulated time is regular upon its face, and is delivered to the payee as a valid and binding obligation for ever so short a time, no contemporaneous parol agreement can be set up to show that payment was not to be demanded at maturity, or until attached collateral had been exhausted, or upon the happening of any other subsequent event not mentioned in the note itself. All such efforts have as their end to change or vary the terms of the written contract, which we think is contrary to the great weight of authority, and is clearly in conflict with the previous decisions of this court.

The trial court was right in excluding the evidence offered by the defendant, and was likewise right in refusing to set aside the verdict of the jury and in entering judgment for the defendant.

*Affirmed.*